## State of Vermont, et al. v. J. Paul Preseault, et al.

[652 A.2d 1001]

No. 93-607

Present: **Allen, C.J., Dooley, Morse and Johnson, JJ.**

Opinion Filed November 10, 1994

*Jeffrey L. Amestoy*, Attorney General, and *John K. Dunleavy*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee State of Vermont.

*John T. Leddy* of *McNeil, Leddy & Sheahan*, Burlington, for Plaintiff-Appellee City of Burlington.

*Paul R. Bowles* of *Hill, Unsworth, Barra & Myers*, Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendants J. Paul Preseault, Patricia Preseault, and 985 Associates, Ltd. appeal the decision of the Chittenden Superior Court granting partial summary judgment to plaintiffs, the State of Vermont and the City of Burlington. Defendants also appeal the court's issuance of a permanent injunction enjoining them from interfering or encroaching on property currently maintained by plaintiffs. We affirm.

This appeal represents another chapter in defendants' on-going attempt to reclaim their purported reversionary interest in a railroad right-of-way adjacent to their property in the City of Burlington. In 1962, the State of Vermont acquired the railroad right-of-way at issue from one railroad company, and subsequently leased it to another. In 1975, this company discontinued rail service for the portion of track abutting defendants' property, and removed all existing railroad equipment.

In 1981, defendants brought a quiet title action alleging that the railroad company's easement had been abandoned, and title to the land in the right-of-way had reverted back to them. The trial court dismissed the action, holding that the matter was within the exclusive jurisdiction of the federal Interstate Commerce Commission (ICC), and we affirmed. *Trustees of Diocese of Vermont v. State*, 145 Vt. 510, 496 A.2d 151 (1985).

Defendants next sought a certificate of abandonment from the ICC, but pursuant to the National Trails System Act, the ICC approved an agreement between the State and the City of Burlington to use the right-of-way as a bicycle and pedestrian path. See 16 U.S.C. § 1247(d) (1988) (ICC given authority to encourage preservation of railroad rights-of-way by establishing interim recreational uses). The ICC chairperson denied defendants' application for a stay pending review and their motion for reconsideration. They appealed to the United States Court of Appeals for the Second Circuit arguing that the statute resulted in an unconstitutional taking, and that it was not a valid exercise of Congress' Commerce Clause power. *Preseault v. ICC*, 853 F.2d 145, 149–50 (2d Cir. 1988). The Second Circuit rejected these arguments, *id.* at 150–51, and the United States Supreme Court affirmed, although on different grounds. *Preseault v. ICC*, 494 U.S. 1, 19 (1990).

The Supreme Court held that the statute was a valid exercise of congressional power under the Commerce Clause, and that it was unnecessary to evaluate the merits of the takings claim because defendants failed to seek compensation under the Tucker Act. *Id.* at 17, 19; see 28 U.S.C. § 1491(a)(1) (providing jurisdiction to United States Court of Claims for claims against the federal government to recover damages based on constitutional, statutory, regulatory, or contractual claims). Accordingly, defendants filed a complaint against the United States in the Claims Court seeking compensation for the alleged taking. For reasons not relevant here, the Claims Court dismissed defendants' claim, and they appealed to the Federal Circuit where they are still awaiting a decision.

In 1987, plaintiffs initiated the present trespass proceedings in state court seeking damages and injunctive relief based on defendants' excavation and removal of large amounts of soil from the railroad right-of-way maintained by the State and leased to the City. Following plaintiffs' waiver of their claim for money damages and based on their motion for summary judgment, the Chittenden Superior Court issued a final judgment for plaintiffs and granted a permanent injunction in November 1993. The court held that defendants' reversionary interest in the right-of-way will vest when the ICC issues an unconditional certificate of abandonment, and until then, plaintiffs have an exclusive possessory interest in the right-of-way.

On appeal, defendants argue that the court erred by failing to address the nature of the State's interest in the right-of-way, and by concluding that plaintiffs' rights in the property were exclusive. In addition, defendants maintain that the superior court's final order was merely an advisory opinion because the trespass issue was moot. Defendants also assert that the court's issuance of a permanent injunction was improper because it failed to make any specific finding that defendants were engaged in a continuing trespass. Finally, defendants argue that the court exceeded its authority by permanently enjoining defendants from entering upon the right-of-way for any purpose. We consider each argument in turn.

Defendants first argue that the superior court erred by failing to determine whether the State's interest in the right-of-way was an easement or a fee simple. They assert that if this interest is merely an easement, then plaintiffs' rights in the property are not exclusive, and defendants retain the right to use the property in any way that does not interfere with the easement. We do not agree.

It is well settled under Vermont law that the holder of a railroad easement enjoys the right to the exclusive occupancy of the land, and has the right to exclude all concurrent occupancy in any mode and for any purpose. *Connecticut & P. Rivers R.R. v. Holton*, 32 Vt. 43, 47 (1859); *Jackson v. Rutland & B. R.R.*, 25 Vt. 150, 159 (1853). Indeed, the right of a railroad to the exclusive occupancy of a railroad easement is said to be virtually the same as that of an owner in fee. *Jackson*, 25 Vt. at 159. Consequently, whether the State has a fee simple or an easement is not relevant to determine its rights.

Defendants further maintain that the State's interest in the right-of-way is not exclusive because the scope of the interest depends on the nature of the use. In this case, defendants contend

that plaintiffs do not have the same rights as a railroad company because they are not operating a railroad; they are operating a bicycle and pedestrian path. Therefore, defendants argue that although their excavation activities would likely intrude upon railway service, it presents no threat or danger to a bicycle and pedestrian path.

This argument fails, however, because it does not consider the effect of the National Trails System Act. The unambiguous purpose of this legislation is not only to provide recreational trails, but to preserve established railroad rights-of-way for future reactivation of rail service. See 16 U.S.C. § 1247(d) (ICC chairman shall encourage states to establish recreational trails "in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service"); see also *Preseault v. ICC*, 494 U.S. at 6. To construe the State's interest in the right-of-way as less than the interest of an operating railroad creates the risk of frustrating Congress' clear intent and purpose. The fact that defendants' excavation activities do not present a threat to the bicycle and pedestrian path is irrelevant because these activities impinge upon the original railroad easement. Consequently, the superior court did not err by concluding that the plaintiffs' rights in the property were exclusive.

■ Defendants' second argument contends that the superior court's final order was merely an advisory opinion because the trespass issue was moot. In support of this argument, defendants note that the excavation occurred only once, and that there was no evidence that they had engaged in any further wrongful conduct. As a result, defendants contend, a live controversy no longer exists. We disagree.

The underlying rationale of the mootness doctrine is that a case becomes moot "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *In re S.H.*, 141 Vt. 278, 280, 448 A.2d 148, 149 (1982) (quoting *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980)). Furthermore, the parties' stake in the litigation must continue throughout its entirety, not merely exist at the time the complaint is filed. *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 239, 515 A.2d 371, 373 (1986).

This case still presents a live and justiciable controversy. Defendants continue to insist that they have a current interest in the right-of-way as long as they do not interfere with the operation of the bicycle and pedestrian path. They continue to vigorously defend their asserted right to engage in excavation or other similar activities in the future. Defendants have not relinquished their claims to the property,

and therefore, they continue to have a real stake in the litigation. As a result, the superior court's final order cannot be construed as an advisory opinion.

■ Defendants also argue that the superior court's issuance of a permanent injunction was improper because it failed to specifically find that the defendants' excavation interfered with the plaintiffs' use and enjoyment of the property, and that even if it did, one instance of encroachment does not rise to the level of a continuing trespass. Regarding the court's failure to find that defendants interfered with plaintiffs' property, defendants' original answer to plaintiffs' complaint specifically admitted that excavation had occurred and that a substantial number of cubic yards of earth had been removed. Accordingly, the court's conclusions are fully supported by the entire record.

■ We are also unpersuaded that one instance of encroachment does not equal a continuing trespass. Vermont law is clear that even the threat of continuous trespass entitles a party to injunctive relief. See, e.g., *Barrell v. Renehan*, 114 Vt. 23, 25, 39 A.2d 330, 332 (1944) (permanent injunction appropriate if trespass is threatened); *Kasuba v. Graves*, 109 Vt. 191, 199, 194 A. 455, 458 (1937) (equity will not refuse relief where a trespass is likely to be continued under a claim of right).

■ In this case, permanent injunctive relief is appropriate because defendants refuse to relinquish their claims to the property. They continue to maintain that they have the right to use the right-of-way in any manner not inconsistent with the bicycle and pedestrian path. These claims are tantamount to an ongoing threat to encroach upon the right-of-way, and therefore, the superior court's permanent injunction order was entirely proper.

■ Finally, defendants argue that the superior court exceeded its authority by permanently enjoining them from entering the right-of-way for any purpose. Defendants construe the court's order as precluding them from enjoying even the recreational pleasures of the bicycle and pedestrian path. Although we agree that the superior court's final order was broadly worded, we do not interpret this order as broadly as defendants. The final order enjoins defendants from interfering with the present use and enjoyment of the subject property; it does not prohibit them from using the property in the same manner as any other member of the general public.

*Affirmed.*