# STATE OF VERMONT

## SUPERIOR COURT – ENVIRONMENTAL DIVISION

============================================================================

### E N T R Y   R E G A R D I N G   M O T I O N

============================================================================

__In re Waitsfield Water System Prelim. Plan Approval Application__     **Docket No. 39-3-12 Vtec**
  (Appeal from DRB subdivision preliminary plat approval)

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

__In re Waitsfield Water System Final Plan Approval Application__     **Docket No. 67-5-12 Vtec**
  (Appeal from DRB subdivision final plat approval)

Title: Motion to Revoke (Filing No. 1 in Docket No. 67-5-12 Vtec)

Filed: May 21, 2012

Filed By: Appellant Virginia Houston

Response filed on 05/29/12 by Appellee Town of Waitsfield

Opposition to Response filed on 06/04/12 by Appellant Virginia Houston


Title: Motion to Dismiss Appeal (Filing No. 1 in Docket No. 39-3-12 Vtec; Filing No. 3 in Docket No. 67-5-12 Vtec)

Filed:  June 7, 2012

Filed By: Appellee Town of Waitsfield

Response in Opposition filed on 06/18/10 by Appellant Virginia Houston

Opposition to Response filed on 06/25/12 by Appellee Town of Waitsfield


___ Granted             _X_ Denied             ___ Other

The above-referenced Dockets concern applications by the Town of Waitsfield ("the Town") for preliminary and final plat approval of a subdivision of lands now or formerly owned by Jean Damon and Virginia Houston.  Ms. Houston ("Appellant") has appealed decisions of the Town of Waitsfield Development Review Board ("the DRB") granting each of these approvals to the Town for its proposed subdivision.  Two motions are currently pending in these appeals—a motion by Appellant to "revoke" the DRB's decision granting final plat approval and a motion by the Town to dismiss both of Appellant's appeals.

We offer the following background facts gleaned from the Town's application for final plat approval of its proposed subdivision and the DRB's decision on that application.  See In re Waitsfield Final Subdivision Plan Review, Application #SUB 11-13 at 1–4 (Waitsfield DRB, Apr. 30, 2012).  We do not understand that any party to these appeals disputes these facts.

In its applications, the Town proposes a subdivision in an effort to develop a portion of the Damon/Houston properties to host a public water supply system for the Town's two village

growth center districts, Irasville Village and the historic Waitsfield Village. The components of the proposed water supply system are described in more detail in the Merits Decision recently issued by this Court concerning Appellant's challenge to the Town's application for a state land use ("Act 250") permit for this same development. See In re Waitsfield Public Water System Act 250 Permit, No. 33-2-10 Vtec (Vt. Super. Ct Envtl. Div. July 11, 2012) (Durkin, J.).

The Town proposes in its subdivision applications to create a new parcel of land, approximately 1.43± acres in size, from sections of both the Damon and Houston parcels. The properties are located off of Long Road in the Town of Waitsfield, Vermont. The parcel to be created is accessed by a private roadway, known as Reed Road, which travels along the boundary line separating the Damon and Houston properties. The Town's subdivision application also calls for the creation of a 1.49± acre parcel that encompasses the private roadway known as Reed Road, travelling from the intersection with Long Road to the area where the Town has already drilled the well to supply the water for its public water supply system. The Town proposes to acquire only an easement over this second parcel, to be enjoyed in common with the co-owners of this second parcel, Ms. Damon and Appellant.

Waitsfield's regulations governing the subdivision of land begin with the requirement that an applicant submit sketch plans for any proposed subdivision, the primary purpose of which is to determine whether the proposed subdivision should be classified as a "minor" or "major" subdivision. See Article II of the Town of Waitsfield Subdivision Regulations ("the Regulations"). Pursuant to Regulations Section 2.2(C), the DRB classified the Town's proposed subdivision for its public water supply system as a major subdivision during the sketch plan review process. The Town thereafter submitted its application for preliminary approval of its subdivision plan. After the DRB issued its preliminary approval,[1] Appellant filed an appeal of that determination with this Court. That appeal was assigned Docket No. 39-3-12 Vtec.

While the preliminary subdivision plan appeal was pending with this Court (Docket No. 39-3-12 Vtec), the Town submitted and the DRB reviewed an application for final plan approval. When the DRB granted final plan approval for the Town's proposed subdivision,[2] Appellant filed a second appeal with this Court. That appeal was assigned Docket No. 67-5-12 Vtec.

Appellant filed a Statement of Question (SOQ) in the latter Docket that is nearly identical to her SOQ in the former Docket. The same substantive issues are raised in Questions 1 through 9 in each SOQ, while the final plan approval appeal includes a tenth Question that challenges the DRB's right to consider and approve the final plan application when the appeal of the preliminary plan determination was pending with this Court.

There are two motions now pending in these Dockets. Appellant first filed a "Motion to Revoke" the DRB's determination of final subdivision plan approval in Docket No. 67-5-12 Vtec, arguing that it was improper for the DRB to act on the Town's final plan approval application when her appeal of the DRB's preliminary plan approval was pending before this Court. The Town then moved to dismiss Appellant's appeals in both Dockets. We address the parties' motions in the order in which they were filed.

---

[1] See In re Waitsfield Preliminary Subdivision Plan Review, Application #SUB 11-13 (Waitsfield DRB, Mar. 20, 2012). We note that while it appears that the Town filed separate preliminary and final subdivision plan approval applications, the DRB assigned the same application number (#SUB 11-13) to both applications.

[2] See In re Waitsfield Final Subdivision Plan Review, Application #SUB 11-13 (Waitsfield DRB, Apr. 30, 2012).

### I. Appellant's Motion to Revoke

As is explained in more detail below, we find Appellant's arguments in support of her motion to revoke to have some logic, as Appellant's appeal prevented the DRB's preliminary approval from becoming final.  But, Appellant offers no authority from the applicable statutes or the Regulations that bars the DRB's consideration of the final plan application.  Thus, as explained below, we ultimately conclude that Appellant's Motion to Revoke must be **DENIED.** We further conclude that, due to the command of our procedural rules to address cases in an efficient and effective manner and the unique procedural continuity between preliminary and final plan subdivision approval processes, the Court should proceed with a single review of both applications now before us on appeal.

Appellant principally argues in her motion to revoke, with reference to appropriate case law, that once she appealed the DRB's preliminary plan approval, only this Court had the jurisdiction and authority to act.  Appellant's legal argument is correct, but it is not applicable in the procedures followed here.   Generally, an appeal vests the appellate tribunal with jurisdiction over the subject matter of the appeal.  See Kotz v. Kotz, 134 Vt. 36, 38 (1975).  The tribunal from which the decision was appealed is "divested of jurisdiction" and cannot revisit its determinations while they are on appeal.  Id.  In Kotz, the Vermont Supreme Court addressed the question of whether a trial court may reconsider and vacate a prior judgment, pursuant to V.R.C.P. 60(b) when that final judgment has already been appealed to the Vermont Supreme Court.  Id. at 37.  The Court concluded it could not, and while Kotz is nearly thirty-seven years old, its precedent remains undisturbed today.  Id. at 39.

The Kotz precedent is not on point here because, in the application before us, the DRB did not revisit its preliminary subdivision plan approval; that determination remains undisturbed before this Court and subject to de novo review.  The DRB considered a separate application by the Town, not yet under appeal before this Court: a request for final plan approval of its subdivision application.  Now that Appellant has appealed the DRB's final subdivision plan approval, both the preliminary and final plan applications are before this Court.

Appellant's assertion that these procedural steps have somehow effectuated an unfair prejudice against her has no foundation.  This Court will render its own determinations, based upon the evidence presented to it during a de novo hearing.  The prior determinations by the DRB will have no impact upon this Court's rulings on the legal issues presented in these appeals.  See 10 V.S.A. § 8504(h); In re Poole, 136 Vt. 242, 245 (1978) ("A de novo hearing is one where the case is heard as though no action whatever had been held prior thereto. All of the evidence is heard anew, and the probative effect [is to be] determined by the appellate tribunal . . . as though no decision had been previously rendered.")

Appellant would have us revoke the DRB's final plan determination, but she provides no legal authority for us to do so.  Given that the Regulations require separate applications for preliminary and final approvals of major subdivisions, Regulations §§ 2.3, 2.4, we know of no authority for prohibiting the review about which Appellant complains, short of a stay that either the DRB or this Court could have put in place.

Rule 5(e) of the Vermont Rules for Environmental Court Proceedings states that, unless "the act or decision appealed from is automatically stayed pursuant to 10 V.S.A. § 8504(f)(1)," the appealed permit "shall" take effect on "the earlier of 15 days from the date of filing of the

notice of appeal or the date of a ruling by th[is] court under this subsection on whether to issue a stay." The automatic stay provided by 10 V.S.A. § 8504(f)(1) is not applicable to the appeals now before us, nor has Appellant requested that we issue a stay of the DRB considering the final subdivision plan application. The practical import of Rule 5(e) is that applicants who receive a permit that is appealed but not stayed may act upon the received permit, but that they do so at the risk of the appellate process overturning their permit. This is exactly the action the Town took by asking the DRB to receive and review the final plan approval application while the preliminary approval was on appeal to this Court. Because we know of no authority for revoking the DRB's action on the final plan application, we conclude that Appellant's motion to revoke must be **DENIED**.

Although Appellant's motion to revoke does not warrant a revocation of the DRB's action granting final plat approval to the Town, it does bring to the Court's attention the inefficiency of allowing two cases that address various stages of the same subdivision application and that raise identical issues to move forward. When the Permit Reform Act of 2004 expanded this Court's jurisdiction, one of its principal purposes was to "consolidate existing appeal routes for municipal zoning and subdivision decisions" and other state land use and environmental determinations. 10 V.S.A. § 8501(1). The first directive in our procedural rules is to "construe[] and administer [our Rules] to ensure summary and expedited proceedings consistent with a full and fair determination in every matter" coming before this Court. V.R.E.C.P. 1. Additionally, our Supreme Court has indicated that even where a municipality elects to have a multi-staged review process for proposed subdivisions, as is authorized by 24 V.S.A. § 4418, "subdivision review [should be considered as] one proceeding from application to preliminary plat review to final plat review." In re Carroll, 2007 VT 19, ¶¶ 11–13, 181 Vt. 383.

Based on these directives, we have established a practice of considering the appeals from preliminary and final subdivision determinations together. We have concluded that considering the appeals together is proper where, as here, all the legal issues presented in each appeal of the same subdivision application can be fairly and fully addressed in one proceeding and decision. Because it is undisputed that all the issues raised in the preliminary plan appeal are repeated in the final plan appeal, we conclude that the most efficient and fair manner in which to proceed is to **DISMISS** the preliminary plan appeal (Docket No. 39-3-12), with the condition that all the legal issues that any party could have raised in the appeal of the preliminary plan approval will be heard within our de novo hearing on the final application. Our intention is to conduct one de novo merits hearing on all properly raised challenges to the Town's subdivision applications in one Docket (Docket No. 67-5-12 Vtec).

## II. The Town's Motion to Dismiss

The Town requests that the Court dismiss all of Appellant's challenges to its subdivision proposal, arguing that Appellant did not "participate" in any of the proceedings before the DRB, and is therefore not entitled to appeal those municipal determinations, pursuant to 24 V.S.A. § 4471(a).

The parties do not appear to dispute the facts that are material to the Court's determination of whether Appellant "participated"; rather, they dispute only how the applicable law should be applied to those facts. It is undisputed that Appellant did not provide sworn testimony before the DRB during either the preliminary or final plat approval

proceedings. In fact, it appears from the DRB hearing minutes[3] that Appellant did not even attend the hearings. Rather, Appellant directed one of her attorneys to attend each DRB hearing and present her concerns by way of a letter addressed to the DRB.[4] Thus, the legal issue presented here is whether a letter, prepared by an opponent's legal counsel, submitted to and considered by the DRB, constitutes the type of "participation" contemplated by 24 V.S.A. § 4471(a). For the reasons detailed below, we conclude that Appellant did sufficiently participate in the DRB proceedings. We therefore **DENY** the Town's motion to dismiss.

The Vermont Supreme Court's decision in Carroll provides the seminal interpretation of the level of participation required for a party to have standing to maintain an appeal of a municipal land use determination. 2007 VT 19. Carroll is particularly on point as it involved an appeal from a multi-stage subdivision application. Id. ¶¶ 2–4.

Carroll involved an appeal by Ms. Carroll of a final plat subdivision approval issued by the Town of Jericho Development Review Board. Id. ¶¶ 3–6. Ms. Carroll conceded that she neither attended nor spoke at the hearing for the preliminary plat review. Id. ¶ 3. Ms. Carroll did, however, jointly with her husband, present a written list of concerns about the subdivision that noted it was on behalf of "the Carroll Family" during the preliminary plat review hearing. Id. The Court ultimately concluded that—because the "nature of subdivision review" is such that the multiple stages should actually be viewed as "one proceeding," and because the applicant was not disputing that the Carrolls' joint written statement was sufficient to constitute Ms. Carroll's participation in the preliminary plat review hearing—her participation at the preliminary plat review stage was sufficient to grant her appeal rights. Id. ¶ 17. The import of Carroll to the case at hand is that the Court in Carroll necessarily found the written statement to be a sufficient means of participation under 24 V.S.A. § 4471(a).

The Town makes a compelling argument that a personal appearance and sworn testimony must be provided to meet the standing requirement of 24 V.S.A. § 4471(a), but we find no support for the Town's assertion in the statutory language, applicable case law, or common practice followed by municipal panels throughout Vermont. We fear that reading an in-person oath requirement into the statute, a requirement that is not explicitly stated in § 4471(a), could lead to many municipal panel proceedings being found deficient. We are also concerned that the Town is now challenging the manner in which Appellant participated when the record does not show that the Town objected to Appellant's submission when the DRB was considering it.

The primary purpose of the participation requirement is to provide sufficient notice of an opponent's concerns about a development project while the municipal panel is considering the permit application. See Carroll, 2007 VT 19, ¶ 14. There can be no doubt that the letter from Appellant's attorney put the Town and the DRB on notice of Appellant's concerns. Further, both the minutes from the DRB hearings and the DRB decisions evidence that the DRB considered, but ultimately rejected, Appellant's concerns raised in the letter drafted by Appellant's attorney. Thus, we conclude that Appellant's submission to the DRB of a letter

---

[3] The Town attached copies of the minutes from the DRB hearings to its June 25, 2012 Memorandum in Reply to Appellant's Response to Motion to Dismiss.

[4] The Town attached a copy of Attorney Gillies's February 14, 2012 letter to the DRB to its Motion to Dismiss as Exhibit A, filed June 7, 2012.

prepared by Appellant's counsel that was subsequently considered by the DRB is sufficient to constitute "participation" under 24 V.S.A. § 4471(a).

For the reasons discussed above, we **DENY** Appellant's Motion to Revoke, we **DISMISS** the appeal in Docket 39-3-12 Vtec with the condition that all the legal issues that any party could have raised in the appeal of the preliminary plan approval will be heard within our de novo hearing on the final application in Docket No. 67-5-12 Vtec, and we **DENY** the Town's Motion to Dismiss.

The parties should prepare to discuss at the next status conference how the remaining appeals should be scheduled for resolution, unless mediation, the results of which the parties have been directed to report by Monday, August 23, 2012, brings about a resolution.

_____          _____July 20, 2012_____
        Thomas S. Durkin, Judge                              Date

==================================================================

Date copies sent to: _____          Clerk's Initials _____

Copies sent to:

  Paul S. Gillies, Attorney for Appellant Virginia Houston

  Joseph S. McLean, Attorney for Appellee Town of Waitsfield